IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GERARDO MARTINEZ, | § § § | |
| *Plaintiff,* | § § | SA-20-CV-00869-ESC |
| vs. | § § § | |
| ANDREW M. SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; | § § § § § | |
| *Defendant.* | § § | |

# ORDER

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II and an application for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On May 20, 2021, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#15], the transcript ("Tr.") of the SSA proceedings [#10], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled and that no reversible legal error was committed during the proceedings. The Court will therefore affirm the Commissioner's decision finding Plaintiff not disabled.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#9, #12, #13].

## II.  Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether:  (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III. Factual Background

Plaintiff Gerardo Martinez filed his applications for DIB and SSI on November 1 and 6, 2017, respectively, alleging disability beginning November 15, 2014. (Tr. 240–55.) At the time of his DIB and SSI applications, Plaintiff was a 52-year-old high school graduate with past relevant work as a dump truck driver. (Tr. 240, 313.) The related medical conditions upon which Plaintiff based his initial DIB and SSI applications were neuropathy, nerve damage to arms and hands, high cholesterol, diabetes, and high blood pressure. (Tr. 312.) Plaintiff's applications were denied initially on March 7, 2018, and again upon reconsideration on July 10, 2018. (Tr. 93–132.)

Following the denial of his claim, Plaintiff requested an administrative hearing. Plaintiff and his attorney Brooke Glidden attended the administrative hearing before Administrative Law Judge ("ALJ") Mark M. Swayze on June 20, 2019. (Tr. 39–74.) Plaintiff and vocational expert ("VE") Phunda Yarbrough provided testimony at the hearing. (*Id.*)

The ALJ issued an unfavorable decision on August 12, 2019. (Tr. 16–23.) The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 15, 2014, the alleged disability onset date. (Tr. 18.) At step two, the ALJ found Plaintiff to have the severe impairments of obesity, diabetes mellitus, peripheral neuropathy, and carpal tunnel syndrome. (Tr. 18–19.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of

the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 19–20.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform medium work, lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking six hours in an eight-hour day, sitting six hours in an eight-hour day, and frequently handling and fingering bilaterally. (Tr. 20–22.) At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a dump truck driver. (Tr. 22–23.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI. (Tr. 23.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on May 27, 2020. (Tr. 1–6.) On July 30, 2020, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises two interrelated points of error in this appeal, both of which challenge the ALJ's RFC determination. Plaintiff argues (1) the RFC is contrary to law and not supported by substantial evidence because it relies entirely on lay analysis of medical records never reviewed by an expert, and (2) the ALJ's credibility assessment is defective because the ALJ failed to consider the "other factors" required by the regulations, namely Plaintiff's stellar work history.

Plaintiff argues that his most significant work-related limitations stem from complications and pain related to his diabetes, particularly in his arms and hands. Plaintiff testified that his diabetes makes his arms and hands feel like a "tire tube" with air pumped into them, as if "they're going to burst." (Tr. 56.) Plaintiff stated at the hearing that he has trouble lifting heavy items, grasping things with his hands, or using his fingers for activities such as typing. (Tr. 59–60.)

Plaintiff explained that if he holds even his cell phone to his ear for more than 30 seconds, he has to switch hands because his extremities begin to go numb. (Tr. 59–60.) Plaintiff also testified to a tear in his right ankle that limits his ability to walk more than a block at a time. (Tr. 59.)

Plaintiff contends that the ALJ erred in several respects in evaluating Plaintiff's self-described symptoms and the medical records in determining Plaintiff's RFC. Plaintiff argues that the ALJ erred in concluding that Plaintiff's description of the extent of his upper extremity limitations was inconsistent with the medical records, in light of the fact that key medical evidence documenting Plaintiff's carpal tunnel diagnosis and the worsening of this condition did not become part of the administrative record until after the latest review by the State Agency Medical Consultants. According to Plaintiff, it was error for the ALJ to interpret these new medical records based solely on his lay opinion without a corresponding review of the records by a medical professional. Additionally, Plaintiff argues that the ALJ erred in concluding that Plaintiff's right ankle and leg impairment was not severe and did not result in any limitations. Finally, Plaintiff contends that the ALJ's failure to consider "other evidence" in assessing Plaintiff's credibility, particular the fact that Plaintiff has worked almost continuously from 1984 to 2012, necessitates remand. The Court finds these arguments to be without merit.

### A. Medical Evidence in the Record

This case contains a limited record of medical evidence. The only medical opinions of record on Plaintiff's work-related limitations are the opinions of the State Agency Medical Consultants at the initial and reconsideration levels. No treating provider supplied a medical opinion for consideration in evaluating the impact of Plaintiff's disabilities.

The State Agency Medical Consultant at the initial level, Dr. Shabnam Rehman, concluded in March 2018 that Plaintiff has no severe impairments, as Dr. Rehman found Plaintiff's diabetes

to be non-severe. (Tr. 96, 103.) In July 2018, the State Agency Medical Consultant at the reconsideration level, Dr. Nancy Armstrong, conversely found Plaintiff's diabetes to be severe but nonetheless concluded that he could perform the full range of medium work and was therefore not disabled. (Tr. 117, 126.)

The record also contains an Adult Function Report completed by Plaintiff in June 2018 that describes his arm and hand impairments, numbness, and pain, which are worse when he uses his extremities. (Tr. 343.) In the report, Plaintiff stated that despite his impairments, he is able to walk three times a week, can mow the grass if he takes breaks, and shops once or twice per week. (Tr. 343.)

The most recent records regarding Plaintiff's carpal tunnel syndrome are from 2019 and, as Plaintiff points out in his brief, were not considered by either of the State Agency Medical Consultants, whose opinions predate the records. These records reflect that Plaintiff saw an orthopedic physician's assistant, Benjamin Rhame, in April 2019 regarding pain, pressure, and weakness in both hands and difficulty in grasping objects and turning objects like a door. (Tr. 771–72.) PA Rhame diagnosed Plaintiff with bilateral carpal tunnel syndrome, recommended bilateral wrist splints, provided a prescription for pain, and recommended follow up with his primary care provider to work on better controlling his diabetes. (Tr. 772.)

**B.     The ALJ's RFC Determination**

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*,

269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

After reviewing Plaintiff's medical records and considering Plaintiff's testimony at the hearing, the ALJ assessed Plaintiff as having the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), including: lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing/walking six hours in an eight-hour day, sitting six hours in an eight-hour day, and frequent handling and fingering bilaterally.  (Tr. 20.)  "Frequent" for purposes of Social Security disability determinations means occurring from one-third to two-thirds of the workdays.  Social Security Ruling (SSR) 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).

In reaching these conclusions, the ALJ properly evaluated the two medical opinions of record—those of the State Agency Medical Consultants—under the new rule governing RFC determinations governing claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  *Id.* at § 404.1520c(a).  Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(b)(2).

The ALJ found the opinion of Dr. Rehman at the initial level that Plaintiff has no severe impairments to be not fully supported by or consistent with the entire record because medical

evidence after Dr. Rehman's evaluation showed Plaintiff to be more limited. (Tr. 22.) The ALJ found the opinion of Dr. Armstrong on reconsideration that Plaintiff's diabetes was severe but did not prevent him from performing the full capacity of medium work to be somewhat persuasive but also not fully consistent with the evidence. (Tr. 22.) Because evidence subsequent to Dr. Armstrong's evaluation showed Plaintiff to have manipulative limitations, the ALJ ultimately concluded her opinion was only somewhat persuasive. (Tr. 22.)

The ALJ also specifically considered and discussed Plaintiff's 2019 records related to his recent diagnosis of carpal tunnel syndrome and accurately summarized the records as to this condition. (Tr. 21.) PA Rhame's records documented in April 2019 that Plaintiff had no swelling or tenderness to palpation of the upper extremities, full range of motion to both wrists and digits of both hands, and 5/5 grip strength. (Tr. 21, 771–72.) Additionally, PA Rhame noted that Plaintiff was neurovascularly intact, with intact sensation, and tested negative bilaterally for Tinel's sign (a method of detecting irritation of the nerves). (Tr. 771–72.) Based on this evidence, the ALJ departed from Dr. Armstrong's opinion and limited Plaintiff to only frequent bilateral fingering and handling as opposed to imposing no limitations in this area (as did Dr. Armstrong).

**C.     The ALJ did not commit reversible error in determining Plaintiff's RFC, and substantial evidence supports his determination.**

On this record, the Court finds that the ALJ properly applied Section 404.1520c in evaluating the persuasiveness of the medical opinions of record, did not commit any other reversible error in calculating Plaintiff's RFC, and that substantial evidence supports his RFC determination. The Court will therefore affirm the Commissioner's decision finding Plaintiff not disabled.

Plaintiff contends that remand is appropriate because no medical expert assessed the effects of Plaintiff's carpal tunnel syndrome on his ability to work, and the ALJ relied solely on his own

8

lay opinion to determine the limiting effects of this condition.  Although Plaintiff does not expressly couch his argument in these terms, he appears to be arguing that it was error for the ALJ not to further develop the record by ordering an additional medical evaluation, in addition to improperly relying on his own lay opinion to analyze the medical data.

Plaintiff, as claimant, bears the burden of proving his disability by establishing physical or mental impairment.  *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).  "Under the applicable regulations, if sufficient medical or other evidence is not provided by the claimant, the secretary is required to make a decision based on the information available."  *Id.* (citing 20 C.F.R. § 404.1516).  "Under some circumstances, however, a consultative examination is required to develop a full and fair record."  *Id.* (citing 20 C.F.R. § 404.1517).  Ultimately, the decision to require an examination—at the government's expense—is a discretionary one.  *Id.*

This duty to develop the facts fully and fairly related to a claimant's application arises only when such an evaluation is "necessary" to enable the ALJ to make the disability determination.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  "A consultative examination becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning [the claimed] impairment."  *Id.* (citation omitted).

The Court need not decide whether the ALJ erred by not developing the record further here.  As with any error, this Court may not reverse an ALJ's decision based on a failure to further develop the record unless the claimant shows that this decision caused him prejudice.  *Brock*, 84 F.3d at 728; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Plaintiff cannot do so because substantial evidence supports the ALJ's ultimate RFC determination as to Plaintiff's upper extremities.  *See Ripley*, 67 F.3d at 557 ("In a situation . . . where no medical statement has been

9

provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.").

In this case, the ALJ considered the 2019 records related to Plaintiff's carpal tunnel syndrome. The ALJ concluded Plaintiff's carpal tunnel syndrome constituted a severe impairment and imposed some limitations on Plaintiff's ability to engage in bilateral fingering and handling, greater limitations than were assessed by either of the medical experts, neither of whom had the benefit of the newer medical records. These 2019 records document conservative treatment (splints and a nonsteroidal anti-inflammatory drug without follow-up with a specialist) for a condition that was not assessed to limit Plaintiff's sensation, wrist mobility, or grip strength. (*See* Tr. 771–72.) Plaintiff has not directed the Court to any records demonstrating a consultative examination was necessary to enable the ALJ to make a disability determination.

The Court rejects Plaintiff's argument that, just because it is theoretically possible that a consultative examiner could find Plaintiff to be more limited in fingering and handling than the ALJ did here, this case should be remanded. This argument focuses on the VE's testimony that Plaintiff's past relevant work as a dump truck driver requires frequent handling and fingering. (Tr. 70.) The Court acknowledges that if a consultative examiner were to limit Plaintiff to only occasional (as opposed to frequent) fingering and handling, an ALJ could conclude that Plaintiff could not perform his past relevant work as a dump truck driver. However, this on its own does not mean a consultative examination was required in this case, because, as was stated above, the inquiry turns on whether there is substantial evidence to support the ALJ's RFC.

Here, Plaintiff's own testimony—as noted by the ALJ in his opinion—provides substantial evidence for the ALJ's RFC. Plaintiff testified that he stopped driving dump trucks, not because of pain or weakness in his extremities, but because he believed (incorrectly) that he was prohibited

10

by law from driving a commercial vehicle once he became insulin-dependent due to his diabetes. (Tr. 57.) As pointed out by the Commissioner in his responsive brief, the Federal Motor Carrier Safety Administration provides a form[2] that drivers can take to their medical providers so they can be certified to drive in interstate commerce despite having insulin-dependent diabetes. When asked at the hearing if he could drive with his hands, despite his condition, Plaintiff responded "I think I could pull it off, but it would be a little difficult, but I could—I think I could drive." (Tr. 57–58.) Plaintiff clarified that he might sometimes need to drive with his knees to rest his hands for a little while, but that he could do it. (Tr. 58.)

Substantial evidence also supports the ALJ's conclusion that Plaintiff's impairment to his right ankle was not severe. Plaintiff testified at the ALJ's hearing that his diabetes does not cause any impairment to his lower extremities or cause any difficulty with standing or sitting for long periods of time, and that, despite his ankle injury, he walks every evening for approximately 30 minutes when the sun goes down and that he mows his lawn. (Tr. 57, 61–62.) This testimony is consistent with Plaintiff's Adult Function Report, which states that he walks three times a week, mows grass, and shops. (Tr. 343.) The medical evidence also supports the ALJ's determination. Although Plaintiff did complain of ankle pain at several appointments in 2018 (Tr. 564, 596), from October 2017 to March 2019, Plaintiff was evaluated as having normal sensation in his feet, normal sensation in all extremities, a normal gait, and a normal foot exam. (Tr. 430, 514, 526, 737.)

Finally, the ALJ was not required to expressly consider Plaintiff's excellent work history in assessing Plaintiff's credibility or articulate his consideration of all the "other factors" listed in the regulation as bearing on that credibility. In making a credibility determination, the ALJ must

---

[2] *See* https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/medical/422521/itdm-assessment-form-final.pdf (last visited May 27, 2021).

consider the objective medical evidence, as well as other factors, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* Social Security Ruling (SSR) 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 Fed. App'x 456, 462 (5th Cir. 2008) (discussing factors). The ALJ explicitly discussed some of these factors in his opinion in making the determination as to the extent of Plaintiff's impairments, namely Plaintiff' medication history. (Tr. 21.)

Insofar as the ALJ failed to discuss some of these factors, this was not reversible error. The evaluation of a claimant's subjective symptoms "is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (internal quotation omitted). "The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reason for denying claims or weighing credibility." *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007) (emphasis in original). Moreover, district courts in this Circuit have rejected imposing a bright-line requirement on an ALJ to consider a claimant's strong work history, as the Fifth Circuit, in contrast to other Circuits, has not adopted such a rule. *See, e.g.*, *Wetzel v. Berryhill*, No. SA-17-CV-00364-RBF, 2018 WL 4664139, at *8 n.7 (W.D. Tex. Sept. 28, 2018) (collecting cases). *See also Myers v. Colvin*, No. EP-16-CV-0033-DCG, 2016 WL 6069506, at *3 (W.D. Tex. Oct. 14, 2016). In

denying benefits, the ALJ here considered the medical evidence under the governing regulations and relied heavily on Plaintiff's own testimony and description of his symptoms in determining that his claimed impairments allowed him to perform work at the medium exertional level, with certain modifications.

In summary, because there is substantial evidence to support the ALJ's RFC determination, and the ALJ did not commit any reversible legal error in making his RFC determination, the Commissioner's decision that Plaintiff is not disabled should be affirmed.

## V. Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

**IT IS SO ORDERED.**

SIGNED this 3rd day of June, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE